**WESTERN PACIFIC RAILROAD COMPANY**

v.

**The UNITED STATES.**

No. 327–61.

United States Court of Claims.

Dec. 15, 1967.

Raymond A. Negus, Washington, D.C., for plaintiff; Lawrence Cake, Washington, D.C., attorney of record. John Guandolo, Washington, D.C., of counsel.

John C. Ranney, Washington, D.C., with whom was Acting Asst. Atty. Gen. Carl Eardley, for defendant.

Before COWEN, Chief Judge, LARAMORE, DURFEE, DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

OPINION

PER CURIAM:

This case was referred to Trial Commissioner Richard Arens with directions to make findings of fact and recommendation for conclusions of law. The commissioner has done so in a report and opinion filed on October 21, 1966. Exceptions to the commissioner's findings and recommended conclusion of law were filed by the plaintiff, and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff in the sum of nine hundred fifty-two dollars and thirty-nine cents ($952.39).

Commissioner Arens' opinion, as modified by the court, is as follows:

The issue to be resolved in this case is the proper freight charges to be assessed against seven shipments of truck mounted cranes which plaintiff transported at the request of defendant from 1953 to 1958 under Government bills of lading from various points of origin in the United States to destination points on plaintiff's lines for exportation overseas.

Six of the shipments were truck mounted revolving cranes, which plaintiff contends should be charged at the commodity rates provided under the listing "Cranes, revolving, mounted on automobile truck or trailer truck" in Item No. 6665 of Trans-Continental Freight Bureau Westbound Tariff 1–G, which reads in pertinent part as follows:

| Item | Subject | Application |
|---|---|---|
| 315 | Rates on Export Traffic. | "In the absence of export rates in Section 1 of TCFB Export Tariff 29 * * * the rates to: (Various cities) on traffic destined to and consigned through to West Coast of Mexico, West Coast of Central America, West Coast of South America, State of Hawaii and all other points in Oceania on or east of the 170th Meridian of West Longitude, also traffic destined west of the 170th Meridian, West Longitude and east of the 30th Meridian, East Longitude, are the rates applying either to San Francisco, Cal., in this tariff, or the all-rail rates applying to Seattle, Wash., in this tariff, whichever are lower, subject to the rules, regulations and routing published in TCFB Export Tariff 29. * * * " |

\*  \*  \*  \*  \*

6665  \*  \*  \*

Cranes, revolving, mounted on automobile truck or trailer truck,

\*  \*  \*  \*  \*

One of the shipments was truck mounted, nonrevolving cranes, which plaintiff contends should be charged at the class rates provided under Item 28382, "Cranes, other than revolving, mounted on automobiles (wrecker trucks for towing or hauling disabled vehicles), loose or in packages" in Uniform Freight Classification No. 2, which reads in pertinent part as follows:

*Item* *Articles*

MACHINERY OR MACHINES, OR PARTS NAMED, * * *

   *        *        *        *        *

28382   Cranes, other than revolving, mounted on automobiles (wrecker trucks for towing or hauling disabled vehicles), loose or in packages.

   *        *        *        *        *

Defendant contends that all of the shipments should be charged at the commodity rates provided under the listing, "Cranes or Derricks" in Item 2050 of Trans-Continental Freight Bureau Tariff No. 29–K, which reads in pertinent part as follows:

| Item | Subject | Application |
|---|---|---|
| 745 | APPLICATION OF WESTERN CLASSIFICATION RULES. | This tariff is governed, except as otherwise provided herein, by the rules (Nos. 1 to 50, incl.), also Bills of Lading provisions published in the Western Classification. |

   *        *        *        *        *

2050   Machinery or Machines or Parts thereof  * * *

   *        *        *        *        *

   Cranes or Derricks  * * *

   *        *        *        *        *

It was established at the trial that the rating for cranes or derricks was added to Trans-Continental Freight Bureau Tariff No. 29 in 1921, that there has never been an entry in this Tariff specifically applicable to cranes, revolving, mounted on trucks, and that the rating for cranes, revolving, mounted on automobile truck or trailer truck, appearing in TCFB Tariff 1–G, became effective in 1934.

█ Most of the testimony at the trial related to the nature and characteristics of the truck mounted cranes. From this testimony, adduced from experts, it is concluded that both shipments are cranes, within the term "Cranes or Derricks," referred to in TCFB Tariff No. 29–K. This conclusion is compelled by the appearances of the truck mounted cranes and the following facts: (a) the truck portion is specifically designed to fit the hoisting upper mechanism and the two can be separated only after considerable time and effort, (b) the experts in the trade regard both the truck portion and the hoisting upper mechanism as a single entity, described as "a crane, perhaps more specifically a truck-crane" and (c) the function at the job site of crawler mounted and truck mounted cranes is almost identical.

Great reliance is placed, both by the courts and the Interstate Commerce Commission, on meanings attached to tariff terms by the trade involved. In Brasco Mfg. v. Chesapeake & Ohio R.R., 229 I.C.C. 533 (1938), the Commission stated:

\* \* \* \* \* \*

\* \* \* \* \* \*

We have repeatedly held that terms in tariffs, unless specifically defined therein, must be given their ordinary commercial meaning and must be taken in the sense in which they are ordinarily understood in the particular trade or industry.

\* \* \* \* \* \*

\* \* \* \* \* \*

See also Union Wire Rope Corp. v. Atchison, Topeka & Santa Fe Ry. Co., 66 F.2d 965 (8th Cir. 1933).

▆ The primary-use doctrine, employed in determining the identification of an item in transportation cases, requires close scrutiny of why the item was created and what it was supposed to do. Atlantic Coast Line R.R. Co. v. United States, 356 F.2d 154, 174 Ct.Cl. 705 (1966). In the instant case the truck portion of the truck mounted cranes was not just for the purpose of moving the hoisting upper mechanism to the job site but, more importantly, to travel at the job site short distances with the loads which were being lifted, in the same manner as a crawler mounted crane.

Plaintiff, in contending that the shipments herein are not cranes within the term "Cranes or Derricks," referred to in TCFB Tariff No. 29–K, relies on Union Pacific R.R. Co. v. United States, 163 Ct.Cl. 473 (1963), in which the court stated:

The item here in controversy is *clearly not a crane or derrick. It is a truck,* 6 ton, 6 x 6, bridge erecting, w/winch. [Emphasis added.]

Factually, that case is obviously distinguishable from the instant case on the basis of the elements heretofore noted which characterize the truck mounted cranes. Support for this conclusion is found in a number of cases of the Interstate Commerce Commission, including Oakland Truck Sales v. Baltimore & Ohio R.R., 270 I.C.C. 548 (1948), in which the Commission ruled that wrecker trucks, with cranes, were "self-propelled cranes," rather than freight automobiles, because the vehicles were specially designed as a complete unit and structural changes would be required before the trucks would be useful for the transportation of freight. See also: Harrison Constr. v. Cincinnati, New Orleans & Texas Pacific Ry., 266 I.C.C. 313 (1946); August Plantz v. Long Island R.R., 281 I.C.C. 172 (1951). Although the parties are agreed that *Oakland Truck Sales* was decided by the Interstate Commerce Commission before the addition of Item 28382 to Uniform Freight Classification No. 2, that fact does not change the conclusion that the generic term "Cranes or Derricks" includes the nonrevolving crane and by analogy the revolving crane as well.

We come then to a consideration of the rates which should be charged for (a) the truck mounted revolving cranes and (b) the truck mounted nonrevolving cranes, bearing in mind that defendant contends that both should be charged at the commodity rates provided under the listing, "Cranes or Derricks" in Item 2050 of Trans-Continental Freight Bureau Tariff No. 29–K; and that plaintiff contends that the truck mounted revolving cranes should be charged at the commodity rates provided in Item 6665 of Trans-Continental Freight Bureau Westbound Tariff 1–G, under the listing, "Cranes, revolving, mounted on automobile truck or trailer truck," and that the truck mounted nonrevolving cranes should be charged at the class rates provided in Item 28382 of Uniform Freight Classification No. 2 under the listing, "Cranes, other than revolving, mounted on automobiles (wrecker trucks for towing or hauling disabled vehicles), or in packages."

### (a) TRUCK MOUNTED REVOLVING CRANES

▆ Since the specific description in the commodity rates provided in Item

6665 of TCFB Tariff 1–G, relied on by plaintiff, and the generic description in the commodity rates provided in Item 2050 of TCFB Tariff 29–K, relied on by defendant, both describe the shipments of the truck mounted revolving cranes, should not the specific description prevail? Well established case law provides the rule that when a commodity shipped can be classified under either of two tariffs, the tariff classification which is more specific or which more closely fits the commodity shipped will apply. Navajo Freight Lines, Inc. v. United States, 176 Ct.Cl. 1265 (1966). The difficulty in attempting to apply this rule to the truck mounted revolving cranes arises from the fact that Item 315 of TCFB Tariff 1–G is self-limiting in its application. Item 315 of the Tariff limits its applicability to instances in which there is an "absence of export rates in Section 1 of TCFB Export Tariff 29." In other words, the rates prescribed in TCFB Tariff 1–G can be used only in instances in which there are no export rates in Section 1 of TCFB Export Tariff 29 applicable to the truck mounted revolving cranes. Since it has been found that the truck mounted revolving cranes are embraced within the term "Cranes or Derricks" in Item 2050 TCFB Export Tariff 29–K, it is concluded that the truck mounted revolving cranes should be charged, as defendant contends, at the commodity rates provided under "Cranes or Derricks" in Item 2050 of TCFB Export Tariff 29–K.[1]

### (b) TRUCK MOUNTED NONREVOLVING CRANES

We have already concluded that the nonrevolving crane is embraced within the broad term "Cranes or Derricks", provided in Item 2050 of TCFB Export Tariff 29–K. Indeed, we do not understand that plaintiff disputes the fact that the item shipped was a crane, for in its brief plaintiff states: "It is conceded by both parties that the shipments were cranes, revolving, truck mounted and medium wrecker truck." (Plaintiff's brief, p. 6)

■ In this factual background, the issue to be decided is whether the commodity tariff containing the broader description of the item shipped is to be applied instead of the classification tariff which contains a specific description. This question has been decided in the affirmative by a long line of decisions by the Interstate Commerce Commission, which hold that "where an article is clearly embraced within a generic commodity designation, and neither the tariff nor the governing classification discloses a contrary intention, the commodity rate is applicable even though the classification description is more specific." Norwich Wire Works, Inc. v. Boston & M. R.R., 232 I.C.C. 593 (1939); Cross Eng'r Co. v. Ann Arbor R.R., 241 I.C.C. 48 (1940); Hobart Mfg. Co. v. Baltimore & O. R.R., 241 I.C.C. 711 (1940); Blockson Chemical Co. v. Atchison, T. & S. F. Ry. Co., 296 I.C.C. 5 (1955). That rule has been adopted and followed by this court. Atchison, T. & S. F. Ry. Co. v. United States, 156 Ct.Cl. 18 (1962).

■ The only remaining question is whether either the commodity tariff or the classification involved here discloses an intention that the classification shall govern. We have found that the rating for cranes or derricks was added to the commodity tariff in 1921 (finding 11(b)). Although we do not know exactly when Item 28382, which provides a specific description of the item shipped, was added to the classification, the parties have agreed that it was sometime after 1948. We find nothing in either the classification or the commodity tariff which shows that the specific description in the classification was intended to override the generally described item in the commodity tariff. In these circumstances, we think the following language of the Interstate Commerce Commission

---

1. For an analogous decision by the Interstate Commerce Commission in which a similar result was reached, see Swift & Co. v. Atchison, T. & S. F. Ry., 269 I.C.C. 209 (1947).

in Blockson Chemical Co. v. Atchison, T. & S. F. Ry., supra, is decisive of the question:

. We reach now the question whether publication of a specific description for chlorinated trisodium phosphate in the classification restricted the commodity-rate item so as to make inapplicable on that article the commodity rates on trisodium phosphate. We think the answer must be in the negative. The description in the commodity tariffs applied and applies on trisodium phosphate without qualification. Had the defendants intended that the ratings and rates on trisodium phosphate should not be applied on chlorinated trisodium phosphate, that fact should and could readily have been expressed in the tariffs in clear and unequivocal language. The publication of the specific classification description on March 10, 1954, left the commodity description unchanged, and thus that description embraced the same articles on and after that date as were embraced therein prior thereto. [296 I.C.C. at 8.]

There are, of course, cases in which tariff draftsmen have shown their intention that a broader commodity tariff does not apply to goods more specifically described in the classification tariff, simply by appending to the item in the commodity tariff the initials "N.O.I. B.N." (not otherwise indexed by name). Since items specifically listed in the classification tariff are therein indexed by name, the use of "N.O.I.B.N." in a commodity tariff shows that the commodity rates are not applicable to the goods specifically described in the classification tariff. That was the situation in Spencer Sons Co. v. Cincinnati, N. O. & T. Pac. Ry., 163 I.C.C. 492 (1930), upon which plaintiff relies. See also Salawitch Auto Parts v. Baltimore & O. R.R., 284 I.C.C. 703 (1952).

Since we have determined that the class rates do not disclose an intention to exclude the commodity rates, the latter rates govern in this case.

The parties have stipulated (finding 13) respecting the amount of recovery, depending upon ultimate conclusions of the court on the two categories of shipments. Since it is concluded that defendant is correct in its theory with respect to both categories, and since the parties agreed that a sum is due plaintiff on certain shipments originally in plaintiff's schedule attached to its petition, but which are no longer in dispute, it is concluded that judgment should be entered for plaintiff in the net amount of $952.39.

COLLINS, Judge, took no part in the decision of this case.