**QUAKER STATE OIL REFINING CORP.**

v.

**UNITED STATES of America and Interstate Commerce Commission**

and

**The Baltimore and Ohio Railroad Company, Intervenor.**

Civ. A. No. 77–72.

United States District Court, W. D. Pennsylvania.

Jan. 26, 1979.

## MEMORANDUM OPINION

KNOX, District Judge.

This is an action brought by plaintiff Quaker State Oil Refining Corporation (hereinafter Quaker State) to review and set aside orders of the Interstate Commerce Commission in Docket No. 36092, entitled *Quaker State Oil Refining Corporation v. The Baltimore and Ohio Railroad Company.* In this action, Quaker State filed a complaint alleging that the rates charged by the railroad company (herein B&O) on shipments of petroleum products from St. Marys West Virginia to Emlenton and Farmers Valley Pennslyvania in this district were inapplicable and that a refund of $93,474.70 was allegedly due the plaintiff as the result of overcharges.

The administrative law judge had originally found in favor of the complainant after submission of the case on written evidence followed by oral cross examination of the traffic manager for Quaker State.

To the initial decision B&O filed exceptions and thereafter on December 30, 1976, division 2 of the Commission issued a final report and order reversing the decision of the administrative law judge and dismissed the complaint. A petition for review was filed but rejected by the Commission. Thereafter, on May 19, 1977, Quaker State filed its complaint in this court seeking a review of the Commission's order. The

B&O was permitted to intervene as a defendant in the proceeding and answers were filed following which the defendants United States and ICC moved for summary judgment. The case has been thoroughly argued and considered on the briefs filed setting forth the positions of the respective parties. Needless to say the B&O supports the position of the government in this case.

Jurisdiction to review this matter by a single district court judge is found in 28 U.S.C. § 1336(a) which provides as follows:

"Interstate Commerce Commission's orders (a) Except as otherwise provided by Act of Congress, the district courts shall have jurisdiction of any civil action to enforce, in whole or in part, any order of the Interstate Commerce Commission, and to enjoin or suspend, in whole or in part, any order of the Interstate Commerce Commission for the payment of money or the collection of fines, penalties, and forfeitures."

■ Notwithstanding the fact that this is not an order for payment of money or refund of overcharges, although such relief was refused by the Commission, the U. S. Supreme Court has held that review of such an order was subject to judicial review in the district court and did not require a three judge court. See *U. S. v. ICC*, 337 U.S. 426, 69 S.Ct. 1410, 93 L.Ed. 1451 (1949). It is still true that appeals orders in such cases granting or denying reparations or other orders of the ICC involving payment of money or collection of fines are matters to be considered by the single judge district court. While 28 U.S.C. § 2321, as amended in 1977, provides for review of the Commission's orders generally in the courts of appeals, nevertheless an order of this sort is still to be reviewed by a single judge district court. See *Island Creek Coal Sales Co. v. I C C*, 561 F.2d 1219 (6th Cir. 1977).

Orders other than those involving monetary matters are of course now subject to review only by the Courts of Appeals under the 1975 Amendments. See Act January 2, 1975, P.L. 93–584.

The question to be decided by this court is whether a partially refined petroleum product known as "slack wax" is a lubricating oil as used in the tariffs of the B&O. The administrative law judge held that it was. The Commission and its division held it was not. This court agrees with the final decision of the Commission.

The difficulty arises in interpreting certain tariffs filed by the B&O. Tariff 49(g) provides for petroleum partially refined:

"Petroleum, partially refined, suitable for mixing, blending, compounding and/or refining into products having commercial value only as a petroleum product containing more than 51 percent petroleum base, carloads, in tank cars, estimated weight 6.6 pounds per gallon, subject to Rule 35 of Uniform Freight Classification and minimum weight provided therein for cars for not less than 20,000 gallon capacity, but, in no case less than 132,000 pounds per car . . ."

This item, in a partially refined petroleum product suitable for refining into products having commercial value, is subject to Item 290 which provides incentive rates for shipments in excess of the first 10,500 gallons on shipments of certain petroleum products. Item 290 provides as follows:

"On shipments of petroleum products as described in items 77240 (except Petroleum Naphtha and Petroleum Naphtha Distillate), 77250, 77290 and 77310 of the Uniform Freight Classification (see Item 5), tendered in tank cars having capacities from 15,000 to 22,500 gallons, subject to estimated weights or actual weight (Rule 35 of Uniform Classification), charges will be computed as follows:

(1) On the weight of the first 10,500 gallons in the tank car, apply rate as published in tariff. (For gallonage in excess of 10,500 gallons, see (2) below. (2) On the weight of the gallonage in the tank car in excess of 10,500 gallons, where the rate under (1) above is shown in Column A below, apply rate opposite thereto in Column B below. (Appendix B of initial Decision)."

It is noted that in order to come within the incentive rate provided in Item 290 the commodity is limited to petroleum products described in Item 77240, 77250, 77290 and 77310 of the Uniform Freight Classification. Neither item 77240 which excepts naphtha and naphtha distillates nor items 77250 and 77310 is applicable. The parties all agree that the controversy, however, arises over 77290, which provides as follows:

"Lubricating oil, in metal cans in crates, or in bulk in barrels, in metal cans completely jacketed, in steel pails, in glass or metal cans in barrels or boxes, in kits or in Packages 488, 577, 589, 791, 1234, 1356, 1367, 1373 or 1442; also CL, in tank cars, Rule 35 estimated weight per gallon 6.6 lb. or in steel bottle carriers."

The question, therefore, is whether the product in question, "slack wax", is a lubricating oil which would be entitled to the incentive rate provided in Item 290.

A lubricant is described in Webster's as a substance that lessens friction when introduced as a film between solid surfaces. We cannot say that there was no rational basis for the conclusion of the Commission that this substance, was not a lubricating oil. The substance is described in the testimony of Mr. Campbell, traffic manager for Quaker State, at Tr. pp. 12–16, as follows:

Q: . . . Now, Mr. Campbell, what is that moved in those tank cars? Was it lubricating oil or partially refined petroleum?

A: It is partially refined petroleum lubricating oil.

Q: It is partially refined petroleum lubricating oil?

A: It is a product which cannot be refined further at St. Mary's, West Virginia, which is transported up to Emlenton or Farmer's Valley, Pennsylvania, to be further refined into oil.

Q: Can I use it in my automobile that way?

A: *You could use it in your automobile if you had the temperature high enough.*

Q: When the classification talks about lubricating oil in metal cans and crates, also carloads in tank cars, do you think it

is talking about something that was to be further refined?

A: I don't know exactly. The item is so stated as lubricating oil, and this product could be used as a lubricating oil as it is in its stage, but it needs to be further refined. In other words, we further refine this to make it into a quality lubricant.

Q: Are you prepared to testify that each one of these tank cars was in fact so refined into lubricating oil.

A: No.

Q: Mr. Campbell, if I understood your testimony this morning correctly, the commodity at St. Mary's, West Virginia, as it moved to Farmer's Valley in Emlenton, is usable as a lubricating oil under conditions given the right temperatures, and so forth; is that correct?

A: That is correct.

Q: And I further understood the purpose of moving it from St. Mary's to Emlenton and Farmer's Valley is to further refine it into a higher quality product?

A: Correct.

Q: The higher quality product being higher quality oil?

A: That is correct.

Q: Mr. Campbell, within your knowledge as the general traffic manager, has the product moved from St. Mary's to Farmer's Valley in Emleton for any other purpose?

A: No.

Q: So that it could follow, would it not, that all of the product that is moved from St. Mary's to Farmer's Valley in Emlenton, . . . was further refined?

A: It is to be further processed.

Q: And Mr. Campbell, it is to be further processed into what?

A: A quality lubricating oil.

The scope of review by this court is extremely narrow in cases such as this. In *Indiana Harbor Belt Railroad Co. v. U. S.*, 510 F.2d 644 (7th Cir. 1975) (Opinion by Judge Maris of the Third Circuit) the court said:

"We think that the reconciliation of these conflicting tariffs and the proper scope of each in view of the other was a matter peculiarly within the competence of the Commission to determine in the light not only of their language but also of all the customs, practices and other underlying facts involved. *U. S. v. Western Pacific RR.*, 1956, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126. To the Commission's determination of such a question the courts will give great weight. *U. S. v. N. Carolina Granite Corp.*, 4 Cir. 1961, 288 F.2d 232."

The question is whether there is a rational basis for the Commission's action. *Bowman Transportation Co. v. Arkansas Best Freight*, 419 U.S. 281 at 288, 95 S.Ct. 438, 42 L.Ed.2d 447 (1974) (Incidentally, this case holds that the Commission is at liberty to reject the findings of the Hearing Examiner where the facts are undisputed. See also *Seeburg Corp. v. FTC*, 425 F.2d 124 (1970)). While there are cases holding that the court should construe a tariff as a contract and that the court has sufficient expertise as well as the Commission to interpret words, the correct rule is laid down by the U. S. Supreme Court in *U. S. v. Western Pacific Railway Company*, 352 U.S. 59, 77 S.Ct. 161, 1 L.Ed.2d 126 (1956) a suit to recover overcharge which was referred to the Commission where it was held that under the regulatory scheme such matters have been placed within the special competence of an administrative body to wit, the Commission. The question involved there was whether the rate on incendiary bombs in a tariff covers steel aerial bomb cases filled with napalm but without fuses. It was held that this was a typical question for the expertise of the Commission. Such question whether one of tariff construction or reasonableness of the tariff should in the first instance be determined by the Commission. This case further holds that a private shipper may not invoke the defense of estoppel against a claim for higher rates claimed by a carrier and this disposes of plaintiff's argument as to opinions and ratings given by the B&O. At page 65 of 352 U.S. at page 166 of 77 S.Ct., 1 L.Ed.2d 133 the court said:

"The courts must not only refrain from making tariffs but under certain circumstances, must decline to construe them as well".

Again, in *Emery Air Freight Corp. v. U. S.*, 499 F.2d 1255, 205 Ct.Cl. 49 (1974), which was an air freight forwarder case under the Aviation Act, the court had deducted overcharges which deductions the forwarder claimed were improper. The court said with respect to such matters which are equally applicable to rail tariffs:

"In interpreting air tariffs as with railroad tariffs, the terms of the tariff should be given their ordinary commercial meaning . . . strained or unnatural constructions are not permitted."

■ Again, in *Western Pacific Railway Co. v. U. S.*, 388 F.2d 312, 181 Ct.Cl. 869 (1967), the Court of Claims said that ordinary commercial meaning should be given to the words in a tariff in the sense in which they are ordinarily understood in the particular trade or industry. Similarly, in *Penn Central Co. v. General Mills Inc.*, 439 F.2d 1338 (8th Cir. 1971), the court held that terms in a tariff are taken in the sense in which they are generally used and accepted. The court should not strain the language to create an ambiguity in order to resolve the same against the carrier. Again in *McLean Trucking Co. v. U. S.*, 387 F.2d 657, 181 Ct.Cl. 170 (1967), the question was whether a word is used in its ordinary sense in tariffs. This is precisely the question which should be determined preliminarily by the ICC. At page 661 the court said:

"Since the primary jurisdiction of the Commission has been invoked on the issue to be decided, we are reminded that the scope of our review is narrow. Unless the findings of the Commission are contrary to law, arbitrary, capricious or unsupported by substantial evidence, they may not be set aside. *General Motors Corp. v. U. S.*, 324 F.2d 604 (6th Cir. 1963). As the courts have often said, the judicial function is exhausted when there is found to be a rational basis for the Commission's conclusions. *Mississippi Valley Barge Line Co. v. U. S.*, 292 U.S. 282, 54 S.Ct. 692, 78 L.Ed. 1260 (1934)."

In the instant case in the light of Mr. Campbell's testimony and in the light of the above principles, the court holds that there was a rational basis for the Commission's decision and the same was neither arbitrary nor capricious and is supported by substantial evidence.

Regardless of this, the court also agrees with the conclusion reached by the ICC that the substance in question is not a lubricating oil. It is obviously a partially refined petroleum product and hence subject to the general classification in tariff 49(g) and is not under the incentive rates which are limited to certain specific commodities. The commodity in question, despite Mr. Campbell's claim that it could be used in an automobile at high temperatures, is obviously not sold in the trade or considered a lubricating oil as it is moved as "slack wax". In its ordinary condition it could not be used as a lubricant. This would mean something which under ordinary conditions could be used for lubricating an engine. It does not mean a lubricant which would not congeal at $-60°F$ or which could only be used in temperatures of 150° or above. This substance is useless as a lubricant at ordinary temperatures and it is apparent that it could not be used in an automobile because the automobile would first have to be heated to a high degree of temperature before the wax would work as a lubricant. It is obvious it would not be marketable for these reasons.

In any event we find that the Commission came to the proper conclusion and that there is no evidence here of capricious action and that there is overwhelming evidence to support its conclusions. We do not find as urged by the plaintiffs that Rule 17, classification by analogy, applies.[1] This

1. "When articles not specifically provided for, nor embraced in the classification as articles 'noibn,' are offered for transportation, carriers will apply the classification provided for articles which, in their judgment, are analogous; in such cases agents must report facts to proper officer of Freight Department in order that rating applied may be verified and necessary

80

rule, by its own words, applies neither in connection with rates published in exceptions to classification, nor in commodity tariffs.

We also will not accept the argument made by the intervenor that this court has no jurisdiction of the matter since the plaintiff originally elected to proceed before the ICC. In support of this contention the intervenor cites *ICC v. Baltimore and Annapolis RR Co.*, 398 F.Supp. 454 (D.Md.1975), aff'd 537 F.2d 77 (4th Cir. 1976). Such a rule only applies where an action is brought before the Commission and finalized and thereafter a separate action is brought in U. S. District Court. This has nothing to do with judicial review of orders of the Commission relative to reparation claims which are covered by 28 U.S.C. § 1336.

This opinion includes the court's findings of fact as required by Rule 52(a).

An appropriate order will be entered.

classification provided. *This rule will not apply in connection with ratings or rates publish-* ed in Exceptions to the Classification or in commodity tariffs."