## PENNSYLVANIA R. CO. v. UNITED STATES.

### No. J–196.

Court of Claims.

June 2, 1930.

This case having been heard by the Court of Claims, the court, upon the report of a Commissioner and the evidence, makes the following special findings of fact:

I. Plaintiff is a corporation engaged in interstate commerce as a common carrier of passengers and freight for hire, duly organized and existing under the laws of the state of Pennsylvania, and has at all times borne true faith and allegiance to the government of the United States of America, and has in no way aided, abetted, or given encouragement to rebellion against said government.

II. During the month of April, in the year 1922, plaintiff, in conjunction with other common carriers, at the instance and request of Lieut. F. J. McCormack, Quartermaster Corps, United States Army, transported on government bills of lading, from Atlanta, Ga., to Perryville, Md., seven shipments of crêpe paper bandages for surgical dressings, hereinafter referred to as bandages, property of the United States, consigned to the United States Public Health Service at Perryville, Md., where all of said shipments were delivered by plaintiff to and received by the United States Public Health Service. As the last carrier of said shipments and the party entitled to be paid for the transportation charges thereon, plaintiff rendered to the Treasury Department of the United States, at Washington, D. C., its bills numbered 9275136 and 9275221, covering the transportation charges on said shipments, totaling $3,469.70, based upon a rate of $2.035 per hundredweight, being the prescribed rate in legally published tariffs on file with the Interstate Commerce Commission for the transportation of "surgical bandages or antiseptic gauze, in boxes."

III. From plaintiff's bill No. 9275136, claiming freight charges on five of the seven shipments of bandages, totaling $2,519.35, the Comptroller General of the United States, under settlement No. T–46919, dated October 12, 1922, disallowed the sum of $1,626.25 and paid plaintiff thereon in the sum of

$893.10. From plaintiff's bill No. 9275221, claiming freight charges on the remaining two shipments of bandages, totaling $950.35, the Comptroller General of the United States, under settlement No. T–45338, dated August 15, 1922, disallowed the sum of $617.85, and paid the plaintiff thereon in the sum of $332.-50. These disallowances were based upon the application by the Comptroller General of the United States of the rate of 66½ cents per hundredweight, being the prescribed rate in certain legally published tariffs on file with the Interstate Commerce Commission for the transportation of "toilet paper, paper toweling, or paper towels."

IV. Upon reconsideration of the foregoing settlements at plaintiff's request, the Comptroller General of the United States made a further payment to the plaintiff on said bill No. 9275136, under settlement Nos. T–79181–T and T–83946–T, dated June 20, 1925, and November 23, 1925, respectively, in the sum of $861.53, leaving a balance claimed by plaintiff on its original bill of $764.72, and a further payment on said bill No. 9275221, under settlement No. T–79077–T, dated June 16, 1925, in the sum of $379.99, leaving a balance claimed by plaintiff on its original bill of $237.86. These additional payments were based upon the application by the Comptroller General of the United States of the rate of $1.555 per hundredweight on less than carload shipments and $1,085 per hundredweight on carload shipments, being the prescribed rate in certain legally published tariffs on file with the Interstate Commerce Commission for the transportation of "paper N. O. I. B. N. [not otherwise indexed by name], not printed nor imprinted, in boxes, bundles, crates or rolls." Further payments on account of said bills have been demanded of and refused by the Comptroller General.

V. The specific shipments referred to in finding II hereof, bill numbers, freight bill numbers, dates of shipment and delivery, car initials and numbers, bill of lading numbers, weights, freight charges based upon the rate of $2.035 per hundredweight, amounts allowed by Comptroller General, and balance claimed by plaintiff on original bills, are set forth in the statement marked "Exhibit A," attached to the petition filed herein, which statement by reference is made a part hereof.

VI. Said shipments consisted of rolls of crêpe paper, three and one-half inches wide and forty-five feet long, packed in boxes, a true sample of which is filed as Plaintiff's Exhibit No. 2 in this cause and made a part hereof by reference. This article, which was manufactured by the Dennison Manufacturing Company of Framingham, Mass., was described by said manufacturer as "Dennison's crêpe paper bandage for surgical dressing," and was for use in holding in place dressings on wounds. The wrapper which accompanied each roll contained the following words and inscriptions:

"Dennison's Crêpe Paper Bandage for Surgical Dressing

"No. 23½. 45 feet long, 3½ inches wide

"Directions

"The loose gummed strip enclosed is to be used for sealing the bandage after it is applied and any unused part may be utilized in refastening the remaining portion of the bandage to prevent unrolling.

"Important

"These bandages can be used to hold dressings on wounds but must not be used directly over the wound. They are most useful in cases where the wounded part is at rest, such as hospital cases, bed cases, etc.

"Dennison Manufacturing Co.,
"The Tag Makers, Framingham, Mass.,
"U. S. A."

VII. At the time said shipments moved there were on file with the Interstate Commerce Commission tariffs relating to the transportation here in question providing (1) a rate of $2.035 per hundredweight, any quantity, on articles therein described as "Surgical bandages or antiseptic gauze, in boxes"; (2) the same rate, any quantity, on commodity therein described as "paper, crêpe, in boxes"; and (3) a rate of $1.085 per hundredweight on carloads, minimum weight 36,000 pounds, and $1,555 per hundredweight, less than carload, applying on commodity therein described as "paper, N. O. I. B. N., not printed nor imprinted, in boxes, bundles, crates, or rolls." The abbreviation "N. O. I. B. N.," under the terms of said tariffs, meant "not otherwise indexed by name," and the said rates so carried as applying to "paper, N. O. I. B. N., not printed nor imprinted, in boxes, bundles, crates, or rolls," could not, under said terms, be applied to the aforesaid transportation if the articles transported were properly described as "paper, not printed nor imprinted," but nevertheless were otherwise indexed by name in consolidated freight classification tariff

No. 2, which is filed as Plaintiff's Exhibit No. 4, and is made part hereof by reference.

Roland A. Bogley, of Washington, D. C. (McKenney, Flannery & Craighill, of Washington, D. C., on the brief), for plaintiff.

L. R. Mehlinger and Charles B. Rugg, Asst. Atty. Gen., for the United States.

Before BOOTH, Chief Justice, and WILLIAMS, LITTLETON, and GREEN, Judges.

BOOTH, Chief Justice.

In the month of April, 1922, the plaintiff railroad company, in conjunction with other carriers, transported for the government, in accord with government bills of lading, seven shipments of crêpe paper bandages for surgical dressings. The shipments originated at Atlanta, Ga., and were consigned to the United States Public Health Service, Perryville, Md. The facts are not in dispute.

The plaintiff company presented its transportation bills for a total sum of $3,-469.70 based upon a rate of $2.035 per hundredweight. When the shipments were accomplished there were no tariffs on file with the Interstate Commerce Commission providing a rate on "crêpe paper bandage for surgical dressing," by that name. There were, however, on file with the commission tariffs providing class rates between the point of origin and destination, applicable to this movement as follows:

"Surgical bandages or antiseptic gauze, in boxes," first class rate any quantity, $2.-035 per hundredweight.

"Paper, crêpe, in boxes," first class rate any quantity, $2.035 per hundredweight.

"Paper, N. O. I. B. N. [not otherwise indexed by name] not printed nor imprinted, in boxes, bundles, crates, or rolls," third-class rate less than carload $1.555 per hundredweight, and fifth-class rate carload, $1.085 per hundredweight.

The plaintiff company's bills were predicated upon a classification of the commodity carried as coming within either the first or second paragraph of the above tariffs. The Comptroller General declined to approve the bills as presented. The first deduction from the amount claimed was based upon a claimed classification of the shipment as falling within the tariffs on file with the Commission providing a rate of 66½ cents per hundredweight for the transportation of "toilet paper, paper toweling, and paper towels." Subsequently, upon a reconsideration of the claim of the plaintiff company, the Comptroller General reversed in part his ruling, allowed some additional sums, and finally classified the shipment under the tariffs on file, which provide a rate for the transportation of "paper, N. O. I. B. N." (not otherwise indexed by name). As a result of the final action of the Comptroller, the plaintiff's original claim was reduced to the extent of $1,002.58. This suit is for the recovery of that sum.

The consolidated freight classification to which recourse must be had in this instance contains class ratings on articles of all descriptions, and the single issue in the case is the ascertainment of a proper classification for the article involved. If the specific article shipped is devoid of features, character, and use which entitle it to be classified as the manufacturers of the article classified it, and possesses no characteristics which bring it within the specific classification contained in the consolidated freight classification, then of course it falls within the comprehensive and general classification, "N. O. I. B. N." The facts, as well as physical exhibit of the article, leave no room for doubt that the same was manufactured and intended for use as a paper bandage for surgical dressing. The defendant makes much of the fact that the paper is not medicated and is not to be applied directly to a wound. This is true, and from the record is the sole defense available, as the defendant produced no testimony. The plaintiff, on the other hand, produced three disinterested witnesses, each an undisputed expert of long experience in freight classification, and without exception the proof establishes that the article involved is a surgical bandage. The fact that it is made of paper and serves to hold the dressing on wounds in place, "which is the common use of the cloth bandage," as well as all others, does not change its identity. There is nothing in the record to disprove the above proven facts, and it may not be disputed that both in form and in substance the article is intended as a surgical dressing and nothing else. Of course it could be used for other purposes, but its *availability* for use is not always determinative. Ford Co. v. Railroads, 19 I. C. C. 507. Its use, however, as disclosed by the experts, becomes a useful factor in determining its identity, and the intended use of articles as disclosed by the consolidated classification for rates indicates by innumerable descriptive terms that the applied ratings originate from variations in

use. W. Scheidel & Co. v. Railroads, 11 I. C. C. 532.

We might prolong the discussion by extending this opinion to various other contentions contained in the briefs. It is sufficient, we think, from the findings, to say that the article transported is a surgical bandage. It was transported to the Public Health Service, manufactured as an inexpensive bandage, for use as directed, and unquestionably adapted for that use. The Interstate Commerce Commission in the early case of Andrews Soap Co. v. Railroads, 4 I. C. C. 41, a case cited in plaintiff's brief, disposed of a classification case, and in so doing decided as follows:

"In this case, if the soap of the complainant, which is represented as a toilet soap, is in fact of no greater value or cost of production than the common soap with which it comes in competition, the discrimination complained of in respect to the classification and rate could readily be obviated by putting it on the market and having it transported as a common or laundry soap. * * *

"The Commission is unable to see how it can properly or justly require carriers to analyze the freight offered to them, to ascertain its quality and its actual value, when those are claimed to differ from its trade designation and the price paid by the consumer. A rule of that kind would be altogether impracticable. * * *

"When a manufacturer describes his article to the public for the purpose of making a market for it, he also so describes it for purposes of carriage, and it seems as reasonable that the carrier should have the right to accept the manufacturer's representation concerning his product as that the public should be influenced by it in the purchase of the article."

The plaintiff is awarded a judgment for $1,002.58. It is so ordered.