Pee Curiam:
Tbis case was referred to Trial Commissioner James F. Davis with directions to make findings of fact and recommendation for conclusions of law under the order of reference and Eule 57 (a). The commissioner has done so in an opinion and report filed on April 1,1968. Defendant filed notice of intention to except to the commissioner’s report on May 1, 1968 and on May 15, 1968 filed a motion to withdraw its notice of intention to except wherein it requested that the court adopt the commissioner’s opinion and enter judgment in favor of the plaintiff against the defendant in the sum of $9,086.47. On May 16,1968 the plaintiff filed a motion for judgment pursuant to the commissioner’s report. Since the court agrees with the commissioner’s findings, opinion and recommended conclusion of law, as hereinafter set forth, it grants the motions of the parties and hereby adopts the commissioner’s findings, opinion and recommended conclusion of law as the basis for its judgment in this case without oral argument. Therefore, plaintiff is entitled to recover and judgment is entered for plaintiff in the sum of $9,086.47.
OPINION OP COMMISSIONER
Davis, Commissioner: The issue in this case is the proper freight charges for numerous shipments of trailers transported by plaintiff for defendant from 1961 to 1964. The *787 trailers are described in Government bills of lading as “freight trailers.” They are two-wheel, %- or 1%-ton trailers used by the Army to haul ammunition or other cargo.
Plaintiff contends the proper freight charges are at the class rate provided under the listing “farm or freight carts, trucks, trailers or wagons, noibn [not otherwise indexed by name] * * * horse-drawn, or trailer” in Item 92900 of Uniform Freight Classification No. 6.
Defendant contends the proper charges should be at the exception rating listed under the heading “agricultural implements * * * and other articles” which includes, among other things, “farm carts, trucks, trailers or wagons, horse drawn or trailer” in Item 875 of Trunk Line-Central Territory Railroads Tariff Bureau, Freight Tariff E/W-2010-F, Classification Exceptions and General Commodity Tariff, and in Item 610 of Western Trunk Lines, Freight Tariff W/S-2001-G, Classification Exceptions and General Commodity Tariff. Defendant concedes that if the exception ratings it urges as applicable do not apply, then the class rates applied by plaintiff do. Uniform Freight Classification No. 6 and both exception tariffs, including their respective indexes, are set out in pertinent part in the findings of fact.[1]
Defendant concedes that “freight trailers,” as such, are not expressly named in the exception tariffs. It contends, however, that the term “other articles” in the phrase “agricultural implements * * * and other articles” includes within its scope the freight trailers here in issue because the word “farm” in “farm carts, trucks, trailers or wagons * * *” in the exception tariffs modifies only “carts” and does not “clearly modify” “trucks, trailers or wagons * * *.” Defendant agrees that if “farm” modifies “trailers” in “trucks, trailers or wagons,” plaintiff will prevail since defendant’s trailers are not “farm trailers.”
Plaintiff, on the other hand, contends that under accepted rules of tariff construction, the adjective “farm” modifies all subsequent nouns and therefore, the exception tariffs here *788 must be construed to read “farm carts, farm, trucks, farm trailers or farm wagons.” Plaintiff also notes that exception tariffs are to be strictly construed and that only articles clearly embraced within the description can be deemed removed from the classification, citing Stevens Bros. v. Northern Pacific Ry. Co., 225 L.C.C. 556, 557 (1937).
To support its position, plaintiff at trial put into evidence history of the pertinent classification and exception tariffs (findings 10 and 12), the index to the classification and exception tariffs in issue (findings 5 to 7), and a letter in. 1960 from a military shipper to the railroad freight classification committees (finding 11) from the content of which plaintiff would infer that “farm trailers” and “freight trailers” are recognized for tariff purposes as separate and distinct goods.
Construction of railroad tariffs is a question of law not different in character from construction of any other documents in dispute. United States v. Missouri-Kansas-Texas R.R. Co., 194 F. 2d 777 (5th Cir. 1952). Strained and unnatural construction is not permitted. Willard Storage Battery Co. v. Associated Transport, Inc., 48 M.C.C. 284, 287 (1948). Review of all the evidence, particularly the history of pertinent tariffs since 1919, leaves no doubt but that “farm” modifies “trailers” in the phrase in issue. The phrase was put in the exception tariff in 1944, exactly as it appeared in the then-applicable consolidated freight classification. Defendant agrees that in similar provisions of later uniform freight classifications, including Item 92900 of Uniform Freight Classification No. 6 here in issue, “farm” modifies all the subsequent nouns. It would strain credulity to accept the proposition that the drafters of the exception tariff bodily transferred a phrase from one tariff to another and intended it to be given a totally different construction. This point is buttressed by the fact that, while the index to the uniform freight classification lists “trailers, farm” and “trailers, freight” as goods included under Item 92900, the index to the exception tariffs lists only “trailers, farm.” This is persuasive evidence that it was not the intent of the exception tariff drafters to include “freight trailers” within the scope of “other articles,” particularly in view of the requirement of the Interstate Com *789 merce Commission that tariff indexes be “complete” and list “all articles upon which commodity rates” are to apply. (Finding 8.) Indeed, even defendant’s expert witness admitted at trial that in view of the exception tariff index listing “trailers, farm,” it is “fair to assume” that “farm” modifies “trailers” in the phrase in issue.
Defendant would make much of the fact that one of plaintiff’s witnesses admitted some items covered by the exception tariff may not be included in the index. While this may at times be true, it would appear to be contrary to I.C.C. rules. In any event, the index here did list certain goods under the heading “freight,” <?.y., “freight bodies,” “freight carts, logging,” “freight dump wagons,” etc. (findings 6 and 7), but did not list “freight trailers.” Also the index listed “trailers, farm” and “trailers, house” but not “trailers, freight.” If freight trailers were intended to be embraced by “other articles,” it would seem the index would reflect this intention, particularly since other “freight” goods are expressly indexed.
Finally, it should be noted that defendant agrees Item 92900 of Uniform Freight Classification No. 6 should be construed so that “farm” and “freight,” though appearing but once in the phrase, modify each of “carts,” “trucks,” “trailers,” and “wagons.” In fact it is on this basis that defendant concedes Item 92900 applies if the exception tariffs do not. Yet defendant would not so construe the exception tariff despite its common genesis with Item 92900 as shown by the tariff history. Defendant cannot have it both ways, and the evidence is compelling that plaintiff’s interpretation is correct.
Therefore, the goods in issue are properly classified under Item 92900 of Uniform Freight Classification No. 6 as “* * * freight * * * trailers * * * noibn * *
Findings of Fact
1. Plaintiff is a Utah corporation and is a common carrier by railroad in interstate commerce over its own lines and jointly with other carriers.
2. From 1961 to 1964, plaintiff transported trailers for defendant from various eastern points of origin to Fort *790 Riley, Kansas, and Lincoln, Nebraska. Thereafter, and according to rules and regulations prescribed by the Comptroller General for the settlement of transportation accounts, plaintiff submitted bills for services so rendered. The bills were paid as originally submitted in accordance with 49 U.S.C. § 66; but on statutory post audit by the General Accounting Office, they were disallowed in part and the alleged overcharges were deducted from other bills due plaintiff on or after December 9, 1962.
3. The shipments were described on the Government bills of lading as “Freight Trailers noibn, s.u. [set up], exceeding 44" high” and were either %-ton or 1%-ton cargo trailers. The parties stipulated and agreed as follows:
(a) The “trailer, cargo: a-ton, 2-wheel, mioi, w/e”, shown in Army Technical Manual TM 9-500, at page 22-58, is representative of all shipments moving from Exeter, Pennsylvania, and Yonkers, New York, to Fort Riley, Kansas.
(b) The “trailer, ammunition: ij-toN, 2-wheel, M332, w/e”, shown in Army Technical Manual TM 9-500, at page 22-52A, is representative of the shipments moving from Bellevue, Ohio, to Fort Riley, Kansas, and Lincoln, Nebraska.
(c) The “trailer, cargo: ií-ton, 2-wheel, mio4, w/e”, shown in Army Technical Manual TM 9-500, at page 22-59, is representative of the shipments moving from Fort Bragg, North Carolina, to Fort Riley, Kansas.
4. The parties further agreed and stipulated as follows:
(a) The sole issue in this case is the proper transportation charges for the shipments noted in findings 2 and 3;
(b) It is plaintiff’s position that Item 92900 of Uniform Freight Classification No. 6 provides the proper rating and rate for the commodities shipped; and
(c) It is defendant’s position that the commodity rate or exception rating published in Items 375 and 3205 of Trunk Line — Central Territory Railroad’s Tariff Bureau, Freight Tariff E/W 2010, and in Items 610 and 2160-A of Western Trunk Lines, Freight Tariff W/S 2001-G, provide the proper rating and rates for the commodities shipped.
5. Uniform Freight Classification No. 6, in effect at the time of the shipments herein, is set out below in pertinent part:

*791

6. Trunk Line — Central Territory Railroads Tariff Bureau, Freight Tariff E/W 2010-F Classification Exceptions and General Commodity Tariff, in effect at the time of the shipments herein, is set out below in pertinent part:

*792

*793

*794

8. Rule 4(c) of Tariff Circular No. 20, issued by the Interstate Commerce Commission in 1928, states rules govern *795 ing the construction and filing of freight-rate publications and is set out below:
Tariffs shall contain in the order named:
❖ # # % #
(c) A complete index, alphabetically arranged, of all articles upon which commodity rates are named therein, together with reference to each item (or page) where such article is shown. When nouns are not sufficiently distinctive, articles shall also be indexed under their adjectives. All of the entries relating to different kinds or species of the same commodity shall be grouped together. For example, all items of coal “Coal,” and descriptive word or words following, as “Coal, anthracite,” “Coal, bituminous,” etc.
9. The following definitions of transportation terminology are pertinent to the issues of this case:
(a) Freight Glassification — A tariff publication containing a list of articles to each of which is assigned a class or category for the purpose of applying class rates, together with the governing rules and regulations.
(b) Exceptions to the Glassification — A tariff publication containing a list of articles which for various good reasons it would not be just to give a standard rating, and therefore these special articles are grouped in a separate publication. The purpose of an exceptions tariff is to remove the rating from the classification with respect to the commodity involved.
(c) Glass Bate — The amount of money per unit of traffic carried applicable to a commodity taking a particular class rating determined from the fréight classification. It is the primary rate for all commodities that move in transportation.
(d) Commodity Bate is a rate published to apply on a commodity or commodities which are specifically named or described in the tariff in which the rate is published. A commodity rate is complete in itself and removes the article or articles it embraces from the classification.
10. (a) Prior to 1919, the three major shipping territories in the United States maintained separate freight tariff classifications, known as the Official Classification, the Western Classification, and the Southern Classification. In December 1919, the three classifications were combined into one book, *796 called Consolidated Freight Classification No. 1, with, uniform descriptions of goods, bnt separate freight ratings on the goods for the different territories. The general subject of “vehicles” was broken down into categories which included, among others, “vehicles, horse drawn” and “vehicles, trailer.” Under “vehicles, horse drawn,” there was a further breakdown “freight carts, noibn,” “farm trucks or wagons” and “freight trucks or wagon noibn.” Under “vehicles, trailer,” there was a further breakdown “freight trailer carts, noibn” and “freight trailer wagons, noibn.”
No pertinent change was made in Consolidated Freight Classification No. 1 until 1928 when Consolidated Freight Classification No. 5, effective June 80,1928, listed under the general heading “vehicles, horse drawn” the category “freight, farm carts.”
(b) Consolidated Freight Classification No. 8, effective November 15, 1933, contained generic headings “vehicles, horse drawn” and “vehicles, trailer.” Under “vehicles, horse drawn,” there were subcategories “freight, carts, farm” and “freight, trucks or wagons, farm.” Under “vehicles, trailer,” there were, among others, subcategories “freight trailer carts” and “freight trailer trucks or wagons.”
Supplement No. 15 to Consolidated Freight Classification No. 8, effective July 16, 1934, combined the categories “vehicles, horse drawn” and “vehicles, trailer” into a single category “vehicles, freight, horse drawn or trailer.” A subcategory thereunder, reading “farm carts, trucks or wagons,” replaced the above-noted subcategories “freight, carts, farm” and “freight, trucks or wagons, farm.”
(c) Uniform Freight Classification No. 3, effective September 11, 1955, contained two pertinent categories under the generic heading “vehicles, other than motor”: first, Item 43510 for “farm carts, trucks, trailers or wagons, horse drawn or trailer * * *”; and second, Item 43535 for “freight carts, trucks, trailers or wagons, noibn * * * horse drawn or trailer * * Supplement No. 1 to Uniform Freight Classification No. 3, effective October 31, 1955, consolidated the two above-described items into Item 43510-A which reads “farm or freight carts, trucks, trailers or wagons, noibn * * *.” Item 43535 was canceled by Item 43535-A *797 which stated that “Item 43510-A applies.” Item 43510-A was reissued as Item 92900 in Uniform Freight Classification No. 6.
11. In 1960, a proposal was filed with the Classification Committee to cancel Item 92900 of Uniform Freight Classification No. 6, under the generic heading “vehicles, other than motor,” and create another item with the same language and ratings under the generic heading “agricultural implements, other than hand.” Various manufacturers, mail order houses and shippers, including the Military Traffic Management Agency of the Defense Department, opposed the change. The proposal was withdrawn and no action taken.
On May 4,1960, Major W. R. Henry, TC, Chief, Negotiations Branch, Military Traffic Management Agency, U.S. Army, stated by letter to the Chairmen of the Classification Committees :
Reference is made to Subject Number 60 in Joint Rail Docket Number 198, a proposal submitted by a shipper to cancel Item 92900 under the generic heading of “Vehicles, other than motor,” and to create another item exact in nature under the generic heading of “Agricultural implements, other than hand.”
The military departments ship many types of vehicles under the generic category of Vehicles, other than motor, and described as Freight Trailer, noibn. A transfer of this description to the generic category of Agricultural implements would necessarily prohibit the use of Freight Trailer, noibn on shipments of military vehicles.
It is requested that we be advised of the reasons for this proposal, and that disposition on this subject be withheld pending further advice from you.
12. (a) In 1932, as part of a general class rate investigation by the Interstate Commerce Commission, ICC Docket No. 1700 Part II, the railroad carriers were ordered to publish commodity or exception descriptions for (i) farm carts (freight) horse-drawn, and for (ii) farm trucks or wagons (freight) horse-drawn, with or without bodies, or trailers thereof.
(b) In 1944, as a result of a shipper’s proposal, the commodity and exception tariffs were amended to provide a commodity description for “agricultural implements, viz., farm *798 carts, trucks, trailers or wagons, horse-drawn or trailer.” The phrase “farm carts, trucks, trailers or wagons, horse-drawn or trailer” was identical to language of the Consolidated Freight Classification in effect at that time. Such phrase was subsequently incorporated in Uniform Freight Classification No. 3 as Item 43510, as well as in Item 375 of CTR 2010 and Item 610 of WTL 2001.
13. The parties agreed and stipulated that as to charges on certain items not here in issue, there is no dispute and that plaintiff, in any event, is due the sum of $1,780.96.
14. The parties agreed and stipulated that if plaintiff prevails on the items in controversy, it is due the sum of $7,305.51 on the disputed items; and if defendant prevails on the items in controversy, neither party is due any recovery on the disputed items.
Ultímate Finding of Fact
15. The trailers here in issue were properly classified under Item 92900 of Uniform Freight Classification No. 6 as “* * * freight * * * trailers * * * noibn * *
Conclusion of Law
Upon the foregoing findings of fact and opinion, which are made part of the judgment herein, the court concludes as a matter of law that plaintiff is entitled'to recover from defendant the sum of $9,086.47.

 For purposes of this case, counsel for both parties agreed at a post-trial conference that the pertinent parts of the two exception tariffs should be construed the same, despite minor inconsequential differences. M.g., the word "truck” in Item 375 in the phrase “farm carts, truck, trailers or wagons * * •” (finding 6) is apparently a misprint and should be “trucks.” Testimony in the record supports this conclusion.