**SOUTHERN PACIFIC TRANSPORTA-
TION COMPANY**

v.

**The UNITED STATES.**

**No. 45–67.**

United States Court of Claims.

Jan. 21, 1972.

———◆———

Martin Sterenbuch, Washington, D. C., atty. of record, for plaintiff; Cake & Sterenbuch, Washington, D. C., of counsel.

John Charles Ranney, Washington, D. C., with whom was Asst. Atty. Gen. L. Patrick Gray III, for defendant.

Before COWEN, Chief Judge, LARAMORE, Judge, DURFEE, Senior Judge, and DAVIS, COLLINS, SKELTON and NICHOLS, Judges.

## OPINION

PER CURIAM:

This case was referred to Chief Commissioner Marion T. Bennett with directions to make findings of fact and recommendation of conclusions of law. The commissioner has done so in a report and opinion filed on June 3, 1971. Exceptions to the commissioner's findings and recommended conclusion of law were filed by the plaintiff, and the case has been submitted to the court on oral argument of counsel and the briefs of the parties. Since the court is in agreement with the opinion and recommendation of the commissioner, with modifications, it hereby adopts the same, as modified, as the basis for its judgment in this case, as hereinafter set forth. Plaintiff is, therefore, entitled to recover and judgment is entered for plaintiff in the sum of eight thousand five hundred ninety-six dollars and five cents ($8,596.05).

Commissioner Bennett's opinion, as modified by the court, is as follows:

Plaintiff, a Delaware corporation operating as a railroad common carrier in interstate commerce over its own lines and jointly with other common carriers, seeks here to recover alleged overpayments deducted from balances due it on freight bills on or after February 20, 1964. Between 1963 and February 20, 1964, plaintiff performed interstate freight transportation services for defendant as final and delivering carrier of certain shipments of generator sets,[1] each mounted on a trailer or a wheel base. Subsequent to such performance, in accordance with rules and regulations promulgated by the Comptroller General for the settlement of transportation accounts, plaintiff submitted bills for services rendered. Thereafter, in the performance of a statutory audit, the General Accounting Office disallowed some of the bills in part and collected the resulting overcharges by deductions from other bills due plaintiff.

There were originally 15 items in dispute, but the parties have now agreed that plaintiff is due the sum of $1,360.78 as to Items 4, 7, 9, 12, and 13. The parties have also agreed as to disputed Items 1, 2, 3, 5, 6, 8, 10, 11, 14, and 15 that if plaintiff prevails, it is entitled to recover an additional amount of $7,235.27 (or a total amount of $8,596.05 on all items at issue), and that if defendant prevails, plaintiff is entitled to recover an additional amount of only $352.36 (or a total amount on all items at issue of $1,713.14).

The issue in this case is over which tariff is applicable to the shipments in question. This issue, in turn, raises the question of the identity or nature of such shipments.

---

1. A generator set consists of one or more generators combined with one or more motors or engines.

Prior to December 26, 1961, Uniform Freight Classification 6 (hereinafter referred to as the UFC) contained, in addition to Item 34760, Item 34745 which read as follows:

| Item | Article | Less Carload Ratings | Carload Minimum (Pounds) | Carload Ratings |
|------|---------|------|------|------|
| | ELECTRICAL APPLIANCES OR EQUIPMENT, OR PARTS NAMED: | | | |
| 34745 | Generator and engine combined, with or without switchboards, noibn, mounted on trailer truck, loose _____ | 85 | 30,000 | 45 |

The parties agree that up to December 26, 1961, Item 34745 would have applied to the shipments in question rather than Item 34760 because Item 34745 was more specific. In supplement 6 to the UFC, effective December 26, 1961, Item 34745 was cancelled by Item 34745–A, as follows:

| Item | Article | Less Carload Ratings | Carload Minimum (Pounds) | Carload Ratings |
|------|---------|------|------|------|
| | ELECTRICAL APPLIANCES OR EQUIPMENT, OR PARTS NAMED: | | | |
| 34745–A | Generator and engine combined—Cancelled. See Item 73723. | | | |

Item 73723, to which reference was made, was a new item which read as follows:

| Item | Article | Less Carload Ratings | Carload Minimum (Pounds) | Carload Ratings |
|------|---------|------|------|------|
| | OUTFITS: | | | |
| 73723 | Electric power, noibn, mounted on trailer, each unit weighing not less than 30,000 pounds _____ | | 30,000 | 45 |

The parties agree that Item 73723 is inapplicable to the shipments in question because none of the units in such shipments weighed 30,000 pounds or more. When Item 34745 was cancelled, no change was made in Item 34760 which read as follows:

| Item | Article | Less Carload Ratings | Carload Minimum (Pounds) | Carload Ratings |
|------|---------|------|------|------|
| | ELECTRICAL APPLIANCES OR EQUIPMENT, OR PARTS NAMED: | | | |
| 34760 | Generators or motors, or generators and engines combined, loose or in packages or in mixed Package 1174, or parts thereof, noibn, in boxes or crates or in Package 1174 _____ | 77½ | 30,000 | 45 |

Item 73720 on which plaintiff relies incorporates by reference Item 73721, and the two items read together as follows:

| Item | Articles | Less Carload Ratings | Carload Minimum (Pounds) | Carload Ratings |
|---|---|---|---|---|
| | OUTFITS: | | | |
| 73720 | Electric lighting, military, other than searchlights or aviation beacons, consisting of generators or generators and engines combined, see Note 13, Item 73721, and other electrical equipment necessary to illuminate military field activities, loose or in packages _____ | 85 | 30,000 | 45 |
| 73721 | Note 13.—Each generator or generator and engine combined may be mounted on or accompanied by a trailer. | | | |

Plaintiff contends that Item 34760 is inapplicable because it does not provide for generator sets being mounted on a trailer or similar vehicle, and the generator sets at bar are so mounted. In short, plaintiff's contention is that to apply Item 34760 would not only violate the UFC distinction between mounted and unmounted goods, but would violate the rule of construction that a tariff should be interpreted so as to give meaning to all its parts. Plaintiff argues, further, that to apply Item 34760 would be an unreasonable interpretation in that it would amount to a reduction in rates pertaining to trailer-mounted generators where there is no evidence of an intent to reduce such rates.

According to plaintiff, Item 73720 of the UFC is applicable to Items 6, 8, 10, 11, 14, and 15, either by its terms or by reason of Rule 17 of the UFC (the rule of analogy).[2] Plaintiff urges that a Section 22 Quotation[3] is applicable instead of Item 73720 to Items 1, 2, and 3, and that an "all freight" commodity

tariff is applicable instead of Item 73720 to Item 5, because a Section 22 Quotation and "all freight" commodity tariff, respectively, result in these instances in lower charges. Plaintiff argues that if there were no Item 73720 in the UFC, the shipments in question would have to be rated as "combination articles" under Rule 18 of the UFC,[4] and such a rating would produce higher charges.

Defendant contends that Item 34760 of the UFC, or various commodity tariffs phrased similarly to Item 34760, are applicable to the shipments in question. Defendant concedes that if Item 34760 is inapplicable, these commodity tariffs are also inapplicable.

Defendant argues that prior to its cancellation, Item 34745 of the UFC applied to the shipments in question because it was more specific than Item 34760. The cancellation of Item 34745–A referred to Item 73723, but Item 73723 is inapplicable to the shipments in dispute because none of the units in these shipments weighed 30,000 pounds or

---

2. Rating by analogy is provided for in Rule 17 of the Uniform Freight Classification which reads, in pertinent part, as follows:

"When articles not specifically provided for, nor embraced in the classification as articles 'noibn,' are offered for transportation, carriers will apply the classification provided for articles which, in their judgment, are analogous; * * *."

3. 49 U.S.C. § 22 (1958).

4. Rating as a combination article is provided for in Rule 18 of the Uniform Freight Classification which reads, in pertinent part, as follows:

"When not specifically classified, articles which have been combined or attached to each other will be charged at the rating for the highest classed article of the combination, * * *."

more. There is no restriction in the language of Item 34760 to generator sets not mounted on trailers. Since Item 34760 is not restricted by the language thereof to unmounted generator sets and Item 73723 is inapplicable, defendant urges that Item 34760 applies to the shipments in issue.

Defendant also contends that the shipments at bar are primarily used as a power source and that the primary use of a shipped article determines the character of such article. Defendant next states that the UFC contains a provision for generators and engines combined (or generator sets), NOIBN, and that the shipments in question fit this provision. Therefore, defendant urges that this provision (Item 34760) is controlling as to the shipments in question.

In addition, defendant states that the men who work every day with equipment such as the articles in dispute refer to such articles as generator sets. According to defendant, the meanings to be given to tariff terms are the meanings and definitions of the trade or industry to which the terms pertain. Next, defendant implies that the shipments in question are generator sets, rather than generator sets mounted on trailers, for transportation purposes, and, therefore, Item 34760 applies to shipments herein.

Finally, defendant cites a dictionary definition of the term "outfits" which it contends connotes something more than a single unit or set. Defendant urges that to include a single unit such as a generator and engine in such definition is too narrow a concept. According to defendant it is permissible to use, and this court has used, a dictionary definition to ascertain the meaning of terms used in a tariff. Defendant argues that a military electric lighting outfit consists of a generator or generators and engines combined (generator set), which may or may not be mounted on a trailer, together with other electrical instruments necessary to illuminate military field activities. Since the shipments in question do not have electrical equipment other than the generator sets, necessary to illuminate field activities, defendant contends

that such shipments are only a component of a military electric lighting outfit and not a complete outfit. Therefore, defendant concludes that Item 73720 is inapplicable to the shipments herein.

It is not necessary to deal with all of the contentions of the parties. Defendant, in pretrial, correctly defined the basic issue as "whether the shipment should be classified under Item 34760 of UFC 6 or under Item 73720."

 In order to determine the applicable freight rate, the first step is to ascertain the actual identity of the shipped article. Navajo Freight Lines, Inc. v. United States, 176 Ct.Cl. 1265, 1275 (1966); Hayes Freight Lines, Inc. v. United States, 163 Ct.Cl. 265, 272 (1963); Pennsylvania R. R. v. United States, 42 F.2d 600, 602–603, 70 Ct.Cl. 276, 282 (1930). No one factor is controlling in determining the actual identity of the shipped article, but some factors to consider in making this determination are the shipping description on the bill of lading, the manufacturer's description for sale purposes, and the function and use of the article. Atlantic Coast Line R. R. v. United States, 356 F.2d 154, 156–157, 174 Ct.Cl. 705, 710–711 (1966); Hayes Freight Lines, Inc. v. United States, supra, 163 Ct.Cl. at 272; Pennsylvania R. R. v. United States, supra, 42 F.2d at 602–603, 70 Ct.Cl. at 282. The bill of lading description of the shipped article is prima facie evidence of the identity thereof and is entitled to great weight. Navajo Freight Lines, Inc. v. United States, supra, 176 Ct.Cl. at 1269, 1275.

In the present case, the bill of lading description, as to each of the shipments in question, represents that it covers generator sets mounted on trailers of some sort. Each bill of lading description in question was prepared by a Government agent, namely a transportation officer. Not only has defendant stipulated that the bill of lading descriptions do not misdescribe the shipments in question, but defendant has described such shipments as consisting "of generators which in some manner have been affixed to a wheeled base. This base may consist

of a two-wheeled cargo type trailer, or a specifically built trailer chassis or some other type of wheeled arrangement."

In the present case, the descriptions contained in the Government technical manuals pertaining to the shipments in question, represent such shipments to be generator sets of various types mounted on trailers of various types. This is analogous to a manufacturer's description of an article for sales purposes, and there is no reason, in logic or in fairness, to accord it less weight for transportation purposes.

The primary function of the shipments in question is to provide a mobile electrical power source, where electrical power is needed but otherwise unavailable. As defendant has stated: "The trailer component is designed to make the equipment mobile. Without the consequent mobility, we feel the units cannot perform their primary function." Further, " * * * the article was to provide electric power to any system that requires a separate power source. This is the primary and predominant use of these articles."

On the basis of the bill of lading description, the Government technical manual descriptions, and the primary use of the shipments in question, it is concluded that shipments in dispute are, in actuality, trailer-mounted generator sets.

Having determined the identity of the articles in question, the next step in deciding on the applicable rate is to ascertain the proper tariff classification. The interpretation of railroad tariffs presents questions of law and does not differ in character from the interpretation of any other document in dispute, and strained or unnatural constructions are not permitted. W. P. Brown & Sons Lumber Co. v. Louisville & Nashville R. R., 299 U.S. 393, 397, 57 S.Ct. 265, 81 L.Ed. 301 (1937); Great N. Ry. v. Merchants Elevator Co., 259 U.S. 285, 291, 294, 42 S.Ct. 477, 66 L.Ed. 943 (1922); Union Pac. R. R. v. United States, 184 Ct.Cl. 785, 788 (1968).

In the interpretation of tariffs, as well as documents, it is well settled that where a shipped article can be classified under either of two tariff provisions, the tariff provision which is more specific or which more closely fits the shipped article controls. Trans Ocean Van Service v. United States, 426 F.2d 329, 353–354, 192 Ct.Cl. 75, 121 (1970); Western Pac. R. R. v. United States, 388 F.2d 312, 315–316, 181 Ct.Cl. 869, 875 (1967); Navajo Freight Lines, Inc. v. United States, supra, 176 Ct.Cl. at 1275; Hayes Freight Lines, Inc. v. United States, supra, 163 Ct.Cl. at 272. A corollary rule of tariff and document interpretation, equally axiomatic, is that all provisions of a tariff or document are to be considered in determining the meaning to be ascribed to one provision thereof, and that meaning should be given which will give reasonable meaning to all provisions and not render a part thereof mere surplusage or create conflicts. Container Transp. Int'l v. United States, 437 F.2d 1365, 194 Ct.Cl. 320 (1971); Southern Ry. v. United States, 156 F.Supp. 740, 742, 140 Ct.Cl. 413, 416 (1957); United States v. Missouri-Kan.-Tex. R. R., 194 F.2d 777, 778 (5th Cir. 1952).

In the instant case, the articles in question are generator sets mounted on trailers. While Item 34760 of the UFC expressly refers to generator sets, it makes no reference to the generator sets being either mounted or unmounted. Item 34760 is an NOIBN item (not otherwise indexed by name), which means that it is a catchall or general provision. Item 73720 expressly refers to generator sets mounted on trailers and is not an NOIBN item. Since both Items 34760 and 73720 refer to generator sets, but only Item 73720 expressly refers to trailer-mounted generator sets, Item 73720 is more specific than Item 34760 and more closely fits the shipments in question.

Throughout the UFC a distinction is made between articles mounted on trailers or wheels and articles without trailers or wheels. This distinction is implicit in the less than carload ratings which

are identical for Items 34745 and 73720 but differ from Item 34760. The reason for this distinction is obvious. As plaintiff's expert testified, the reason for the distinction "is that if you don't have wheels your density and your loading capabilities are much greater than if you had this mounted on wheels * * *." In the present case, the articles in question are mounted on trailers. To apply Item 34760, which makes no reference to vehicles or wheels, to the shipments in question, not only would render Item 73720 (which refers to trailer-mounted generator sets) superfluous, but would ignore the distinction pervading the entire UFC between articles mounted on trailers or wheels and articles without trailers or wheels.

Defendant's expert who performed the statutory audit, testified that at the time of the audit she had no information with which to determine whether the shipments in question were or were not the type of generator sets covered by Item 73720; she had no information as to the use of the generator sets; she relied on the description in the Government technical manual (not made available to plaintiff) as well as on the bill of lading description; and in her opinion for Item 73720 to be applicable a generator set must be shipped with other electrical equipment necessary to illuminate military field activities.

■ Based on the foregoing, we first conclude that the shipments are not specifically provided for in Item 34760 nor embraced in that item as articles NOIBN and, therefore, that Item 34760 is not applicable. It follows from this determination that none of the commodity tariffs upon which defendant relies is applicable, because defendant agrees that if Item 34760 is not applicable, none of such commodity tariffs is applicable.

Since we have already decided that Item 73720 is more specific than Item 34760 and is more analogous to the disputed shipments, this is an appropriate case for the application of Rule 17 of the Uniform Freight Classification (n. 2, *supra*). As a result, plaintiff is entitled to have its charges for the disputed shipments computed pursuant to Item 73720.

 If we were to assume *arguendo* that the Uniform Freight Classification did not contain Item 73720 and that Rule 17 should not be used here, we would reach the same result by applying Rule 18 of the Uniform Freight Classification which covers articles which have been combined or attached to each other (n. 4, *supra*). If this interpretation were adopted, plaintiff would have the right to charge for the shipments at the rating for the highest classified article of the combination. Defendant concedes that if plaintiff's charges were computed on that basis, the charges would be higher than, or certainly no less than, the amount plaintiff claims.